UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RBG PLASTIC, LLC, d/b/a RESTAURANTWARE, | ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | No. 1:18-CV-05192 |
| v. | ) ) ) | Judge Edmond E. Chang |
| THE WEBSTAURANT STORE, d/b/a WEBSTAURANTSTORE.COM and CLARK ASSOCIATES, INC., | ) ) ) ) | |
| Defendants/Counter-Plaintiffs. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this trademark infringement case, Plaintiff RBG Plastic has alleged that Defendant The Webstaurant Store has infringed three of RBG's registered marks for the name "RESTAURANTWARE." Webstaurant, in turn, has brought five counterclaims against RBG, alleging that the marks are invalid because they are generic or descriptive, and that they were procured by fraud against the Patent and Trademark Office.[1] RBG now seeks to dismiss the four counterclaims that are based on fraud allegations, and concurrently moves to strike a number of Webstaurant's affirmative defenses. For the reasons discussed in this Opinion, the Court grants RBG's motion to dismiss the counterclaims, and strikes affirmative defenses 9, 10, 12, 13, and 15.

---

[1]Because this case arises under the Lanham Act, this Court has subject matter jurisdiction over the federal law claims under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over RBG's state law claims under 28 U.S.C. § 1367.

1

## I. Background

RBG Plastic owns three registered trademarks for "RESTAURANTWARE." The first, U.S. Trademark Registration No. 5,293,708, covers "On-line retail store services featuring preparation, serving, and dining supplies for the food service industry." R. 90, First Am. Compl. ¶ 19. The second, No. 5,293,709, covers "Bowls; Compostable and biodegradable plates, bowls, cups and trays; Cooking pans; Cooking skewers; Disposable dinnerware, namely, cups, bowls, plates, and saucers; Drinking vessels; Serving bowls (hachi); Serving dishes; and Serving trays." *Id.* ¶ 18. The third, No. 5,283,420, covers "Compostable and biodegradable cutlery, namely, knives, spoons, forks; Disposable tableware, namely, knives, forks and spoons; Plastic cutlery, namely, knives, forks, and Spoons." *Id.* ¶ 17.

All three marks were prosecuted before the Patent and Trademark Office in 2016 and 2017. R. 107, Def.'s First Am. Aff. and Counterclaim to Pl.'s First Am. Compl. ¶¶ 18, 20–24, 34–38, 48–52. In response to RBG's claims of infringement of its valid marks, *see* First Am. Compl. ¶¶ 36–61, Webstaurant now alleges that, despite the fact (as Webstaurant sees it) that "restaurant ware" and "restaurantware" are widely used within the restaurant industry and even beyond, RBG falsely and fraudulently sought to represent its use of "RESTAURANTWARE" as distinctive (that is, not descriptive or generic). *See* First Am. Aff. and Counterclaim ¶¶ 14–63. In the first counterclaim, which RBG does not seek to dismiss, Webstaurant alleges simply that the trademarks are invalid because they are descriptive or generic. *Id.* ¶¶ 14–16. But Counterclaims 2, 3, and 4 allege that RBG procured each of the three

2

trademarks, respectively, by various fraudulent misrepresentations to the Patent and Trademark Office. *Id.* ¶¶ 17–32, 33–46, 47–60. Counterclaim 5 seeks civil damages for the conduct alleged in Counterclaims 2 through 4. *Id.* ¶¶ 61–63.

Webstaurant also pleads a variety of affirmative defenses: (1) fair use; (2) innocent infringement; (3) statute of limitations; (4) laches; (5) generic terms; (6) lack of secondary meaning; (7) waiver, acquiescence, and estoppel; (8) unclean hands; (9) failure to mitigate; (10) First Amendment; (11) trademarks not an indicator of source; (12) fraud; (13) third-party use; (14) invalidity; and (15) competition. First Am. Aff. and Counterclaim at 1–5. RBG challenges numbers 1, 2, 7, 9, 10, 12, 13, and 15 as inadequately pleaded. R. 109, Pl.'s Mot. to Dismiss ¶¶ 24–28.

## II. Standard of Review

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 679.

Ordinarily, under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But claims alleging fraud must also satisfy the heightened pleading requirement of Federal Rule of Civil Procedure Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). Thus, Rule 9(b) requires that Webstaurant's counterclaims "state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (internal quotation marks and citation omitted). Put differently, its complaint "must describe the who, what, when, where, and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (internal quotation marks and citation omitted).

Setting aside the counterclaims, the parties dispute whether affirmative defenses must be pleaded with particularity under *Twombly* and *Iqbal*. *See* Pl.'s Mot. to Dismiss at 14–15; R. 113, Def.'s Resp. at 13–15. Because the Seventh Circuit has not yet addressed this question, the Court explores it in greater depth below, and concludes that the answer is no.

## III. Analysis

### A. The Fraud Counterclaims

RBG has moved to dismiss four of Webstaurant's five counterclaims, alleging that they fail to adequately state a claim. Fed. R. Civ. P. 12(b)(6). Each of these claims is premised on fraud allegations, and thus each is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). None clears that bar.

The first targeted counterclaim is Counterclaim 2. In that counterclaim, Webstaurant alleges that RBG defrauded the Patent and Trademark Office in procuring mark number 5,293,708. First Am. Aff. and Counterclaim, ¶¶ 17–32. Webstaurant offers two reasons: first, although RBG's application said that it did not "seek[] to register the mark for sales within the restaurant or hotel industry," First Am. Aff. and Counterclaim, Exh. A, this was allegedly untrue because RBG's website, in Webstaurant's view, in fact "claims that it has been a leading restaurant supply manufacturer and ecommerce supplier since 2010." First Am. Aff. and Counterclaim, ¶ 19, Exh. B. In support of this allegation, Webstaurant quotes the following excerpt from RBG's website: "At Restaurantware, we're committed to leading the way for environmentally conscious businesses within the food and beverage industry. Since 2010, Restaurantware has been a leading restaurant supply manufacturer and e-commerce company serving foodservice professionals across the globe." *Id.*

Webstaurant also takes issue with RBG's representation to the Patent and Trademark Office, via its attorney of record, that the RESTAURANTWARE mark had become distinctive through RBG's "substantially exclusive and continuous use."

5

*Id.* ¶ 20. In reality, Webstaurant argues, RBG's own allegations in Paragraph 32 of its First Amended Complaint show that this was false and that RBG knew that: "In fact, in 2016 Bing Ads indicated that Webstaurantstore was RBG's number one competitor in search engine advertisement purchasing." Webstaurant also submits several exhibits purporting to show the use of the term "restaurant ware" (though as two words, not one) in the 2009 Harmonized Tariff Schedule of the United States, Exh. D; in an eBay search, Exh. E; and in two searches of Target's website, Exh. F and Exh. G.

Relying on similar allegations, Counterclaim 3 alleges that RBG's trademark number 5,293,709 was also procured by fraud. First Am. Aff. and Counterclaim, ¶¶ 33–46. Webstaurant again points to the representation by RBG's attorney in which RBG said that the RESTAURANTWARE mark was distinctive and not descriptive (the latter "because its products cannot be defined as 'items used in restaurants'"). *Id.* ¶ 38. This was patently false, Webstaurant argues, "because the components of the mark are descriptive of RBG's goods and its products can be defined as items used in restaurants." *Id.*

The same goes for Counterclaim 4, which challenges trademark number 5,283,420. Again, Webstaurant alleges that, despite RBG's legal arguments to the contrary, RBG "in fact sought to register the mark for sales and use within the restaurant industry," *id.* ¶ 48; the mark had not become distinctive and RBG's use was not substantially exclusive, *id.* ¶¶ 49, 51; and that the terms "restaurantware" and "restaurant ware" are commonly used within the restaurant industry, *id.* ¶¶ 50, 52.

6

These counterclaims fail for two main reasons. First, Webstaurant has not alleged that RBG made any false statements of *fact*. All of Webstaurant's allegations are drawn from *argument* presented by RBG's attorney of record, who was (naturally) attempting to convince the Patent and Trademark Office that "RESTAURANTWARE" was worthy of trademark registration. Each of the targeted statements are properly characterized as *arguments* that a certain set of facts satisfies a particular registration element as a matter of law. For example, whether a mark is generic or descriptive, or whether particular other uses of the term undermine whether RBG was using the mark on a *substantially* exclusive basis, are all issues that apply the legal registration element to a particular set of facts. And none of the targeted statements are simply facts that can form the premise of a fraud claim. It is of course possible to allege fraud in the procurement of a trademark when the applicant submits false *facts*, such as a fraudulently created document. But that is not the case here. Perhaps the Patent and Trademark Office made a mistake in granting protection to the RESTAURANTWARE mark, but that is the issue in Counterclaim 1. There are no targeted facts that can subject RBG to liability for fraud.

Second, at the heart of RBG and Webstaurant's dispute is the characterization of the industry within which RBG operates. Webstaurant says that RBG operates within the "restaurant" industry and that any statements to the contrary are lies. RBG, by contrast, acknowledges that it sells some of its products to restaurants directly, but that another segment of its products end up in restaurants via sales to food-service companies. R. 109, Pl.'s Mot. to Dismiss ¶ 13. To RBG's way of thinking,

7

RBG operates within the broader food-service industry, selling primarily to large food distributors, as well as to catering companies, large institutions, event venues, and even private consumers. *Id.* ¶¶ 13–15.

Again, this is an instance in which the legal meaning of which "industry" RBG operates in presents a different question than whether RBG misrepresented *facts* underlying that determination. The same goes for the question of whether the RESTAURANTWARE marks are distinctive and valid in whatever industry RBG is found to operate in. At this stage of the litigation, there simply is nothing in the counterclaims' allegations to suggest—especially when measured against the heightened pleading standard in Rule 9(b)—that RBG committed fraud in procuring the registrations. So Counterclaims 2, 3, and 4 are dismissed for those reasons. Counterclaim 5, which seeks civil damages for the allegedly false or fraudulent registration of these trademarks under 15 U.S.C. § 1120, is dependent on the viability of Counterclaims 2, 3, and 4. So Counterclaim 5 is dismissed as well. Because this was Webstaurant's first attempt at pleading fraud, the dismissal is without prejudice (though the Court is skeptical that the claims can be fixed).

### B. Standard for Affirmative Defenses

RBG has moved to strike many of Webstaurant's affirmative defenses on the ground that they are inadequately pleaded. The Seventh Circuit has not yet decided whether the plausibility-pleading standard of *Twombly* and *Iqbal* applies to affirmative defenses. Neither have the First, Fourth, Eighth, Tenth, Eleventh, D.C., and Federal Circuits. The Second Circuit *has* applied *Twombly*/*Iqbal* to affirmative

8

defenses. *See GEOMC Co., Ltd. v. Calmare Therapeutics, Inc.*, 918 F.3d 92, 98 (2d Cir. 2019). The Third, Fifth, Sixth, and Ninth Circuits require only that an affirmative defense be pleaded so as to give the other side "fair notice." *See In re Frescati Shipping Co., Ltd.*, 886 F.3d 291, 313 (3d Cir. 2018); *LSREF2 Baron, LLC v. Tauch*, 751 F.3d 394, 398 (5th Cir. 2014); *Brent v. Wayne County Dep't of Human Services*, 901 F.3d 656, 680 (6th Cir. 2018); *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1023 (9th Cir. 2010), *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). At this time, then, there is no national consensus that affirmative defenses are held to the same pleading standard as claims. If anything, it is the opposite, with more Circuits refraining from applying *Twombly/Iqbal* to affirmative defenses.

Having said that, many district-court decisions in this Circuit have applied the *Twombly* and *Iqbal* standard to affirmative defenses. *See, e.g., Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1040 (N.D. Ill. 2014); *Behn v. Kiewit Infrastructure Co.*, 2018 WL 5776293, at *1 (N.D. Ill. Nov. 2, 2018); *Teamsters Local Union No. 75 v. Central Contractors Service*, 2020 WL 5994496, at *8 (N.D. Ill. Oct. 9, 2020). Some decisions have even characterized this as the "majority view." *See Shield Technologies Corp. v. Paradigm Positioning, LLC*, 2012 WL 4120440, *8 (N.D. Ill. Sept. 19, 2012). Most opinions extending the *Twombly/Iqbal* standard do so out of the valid objective of maintaining consistency among all types of pleadings. The opinions can find support—though general support, not a specific holding—in the Seventh Circuit's directive that "[a]ffirmative defenses are pleadings and, therefore, are

9

subject to all pleading requirements of the Federal Rules of Civil Procedure" in *Heller Financial, Inc. v. Midwhey Powder Co, Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Despite the general validity of that proposition, however, a close comparison of Civil Rule 8's textual treatment of claims versus affirmative defenses dictates that affirmative defenses are subject to a *lower* pleading standard than claims.

Civil Rule 8(a)(2) instructs courts on what to look for when evaluating claims: "A pleading that states a *claim* for relief must contain: (2) a short and plain statement of the claim *showing* that the pleader is *entitled* to relief." (Emphases added.) So a claim must allege enough—albeit in a short and plain way—to show that the claimant is entitled to relief. In contrast, Rule 8(b)(1)(A) and Rule 8(c)(1) require the responding party to "state" defenses, Fed. R. Civ. P. 8(b)(1)(A), and to "state" affirmative defenses, Fed. R. Civ. P. 8(c)(1). Specifically, on defenses, Rule 8(b)(1)(A) says the party must "state in short and plain terms its defenses to each claim asserted against it." On affirmative defenses, Rule 8(c)(1) just says that the party "must affirmatively state any avoidance or affirmative defense …." This distinction is crucial: *Twombly* specifically and repeatedly recited the text of Rule 8(a)(2) as the key terms that the Supreme Court was interpreting. 550 U.S. at 555 (describing Rule 8(a)(2) as requiring "a short and plain statement of the claim showing that the pleader is entitled to relief") (quotation omitted); *id.* at 555 (separately quoting "entitlement to relief" to require "more than labels and conclusions"); *id.* at 557 (describing that a complaint is inadequate if it "stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'"). But the terms "showing" and "entitled to relief" are *not* in Rule

10

8(b)(1)(A) governing defenses nor in Rule 8(c)(1) governing affirmative defenses. So the plausibility-pleading standard erected by *Twombly* (and *Iqbal*, which elaborated on *Twombly*) does not apply to defenses and affirmative defenses. Instead, the statement of defenses and affirmative defenses must be enough to give "fair notice," but nothing more than that. *See In re Frescati Shipping Co., Ltd.*, 886 F.3d at 313; *LSREF2 Baron, LLC*, 751 F.3d at 398; *Brent*, 901 F.3d at 680; *Simmons*, 609 F.3d at 1023.

### C. Affirmative Defenses

RBG has moved to strike Webstaurant's first, second, seventh, ninth, tenth, twelfth, thirteenth, and fifteenth affirmative defenses. RBG also argues that the affirmative defenses ought to be dismissed with prejudice. The Court addresses each affirmative defense in sequential order.[2]

**Affirmative Defense 1: Fair Use.** Webstaurant says that the doctrines of "fair use, nominative fair use and/or descriptive use" bar RBG's claims, and that RBG's use of RESTAURANTWARE and similar terms was "made other than as a mark, in a descriptive or generic sense and in good faith." Def.'s First Am. Aff. and Counterclaims, 1–2. Fair use is a statutorily recognized affirmative defense to allegations of trademark infringement. *See* 15 U.S.C. § 1115(b)(4). Especially in

---

[2]It is worth noting that, in almost all cases, the parties refrain from moving to strike affirmative defenses because, in almost all cases, the affirmative defenses do not make any appearance in the case and no dispute arises from them. To be sure, there might be occasions where it is appropriate to make the motion because doing so will concretely prevent unwarranted discovery, needless discovery disputes, or otherwise expedite the case. But in most cases, this kind of motion is a waste of time, and can be resolved with conferrals and reasonableness on both sides. The Court expressed this observation in R. 98, but apparently the parties here have kept up the fight.

11

conjunction with Webstaurant's first counterclaim, which challenges the validity of RBG's marks, this affirmative defense has put RBG on adequate notice of its substance.

**Affirmative Defense 2: Innocent Infringer.** This affirmative defense seeks to mitigate any damages that might be awarded under RBG's claim for a violation of the Illinois Uniform Deceptive Trade Practices Act. *See* First Am. Compl. ¶¶ 52–56. That statute does not require a plaintiff to prove intent to deceive, *see* 815 ILCS 510/3, but does allow "[c]osts or attorneys' fees or both" to be "assessed against a defendant *only if* the court finds that he has *willfully* engaged in a deceptive trade practice." *Id.* (emphasis added). Again, given Webstaurant's allegations elsewhere in the pleading to the effect that Webstaurant does not believe that RBG's marks are valid, this affirmative defense is adequately pleaded.

**Affirmative Defense 7: Waiver, Acquiescence, and Estoppel.** This affirmative defense is adequately pleaded because RBG alleges that the infringing misconduct began in 2011; RBG did not file this suit until 2018; and Webstaurant alleges that the delay caused it prejudice as Webstaurant "continued the allegedly infringing conduct without objection by [RBG] during that time period." Def.'s First Am. Aff. and Counterclaims at 3.

**Affirmative Defense 9: Failure to Mitigate.** In support of this affirmative defense, Webstaurant states only that "Plaintiff could have reasonably avoided all or part of its claimed damages, if such damages exist." Def.'s First Am. Aff. and Counterclaims at 4. This statement is too conclusory and generic to give RBG any notice

12

of the actions that Webstaurant believes RBG should have taken to mitigate the alleged damages. This affirmative defense is therefore stricken, though without prejudice if Webstaurant later develops more information to provide a more fulsome set of allegations.

**Affirmative Defense 10: First Amendment.** This affirmative defense alleges that RBG's claims are barred by the First Amendment. But this is not so: routine trademark claims like these generally have survived First Amendment challenges; only rare exceptions in inapposite settings have held otherwise. *See, e.g.*, *Iancu v. Brunetti*, 139 S. Ct. 2294, 2299–2300 (2019) (invalidating only the Lanham Act's prohibition on protection of "immoral" and "scandalous" marks as impermissibly viewpoint-based within the meaning of the Free Speech Clause); *Matal v. Tam*, 137 S. Ct. 1744, 1751 (2017) (holding that the Lanham Act's disparagement clause is facially unconstitutional under the Free Speech Clause). Webstaurant says that it "had the right to free speech to use the subject terms on which Plaintiff alleges infringement because the terms are descriptive or generic." Def.'s First Am. Aff. and Counterclaims at 4. But this is merely a restatement of Webstaurant's core argument—that the RESTAURANTWARE marks are invalid. This affirmative defense is stricken, and because it appears that there is no fix for it, the dismissal is with prejudice.

**Affirmative Defense 12: Fraud.** This affirmative defense fails for the same reason as Webstaurant's fraud-based counterclaims. Civil Rule 9(b) requires that, in "alleging fraud or mistake, a party must state with particularity the circumstances

13

constituting fraud or mistake." The plain language of the rule does not limit this requirement to the pleading of claims for relief, and Webstaurant's conclusory and general statement does not clear the high bar established by Rule 9(b). This affirmative defense is stricken, but without prejudice.

**Affirmative Defense 13: Third-Party Use.** In support of this affirmative defense, Webstaurant states only that RBG's claims "are barred in whole or in part, by reason of other parties' use of any marks at issue." Webstaurant has alleged elsewhere that RBG did not have substantially exclusive use of the mark, as evidenced by Webstaurant's own alleged use of the mark. To the extent that this affirmative defense is intended to cover any other entities' use of RESTAURANTWARE, though, it fails to put RBG on notice, which it could have done, for example, by naming one or more of those third parties, or describing some aspect of their use of the mark. This affirmative defense is stricken (if it even is an "affirmative" defense), though without prejudice.

**Affirmative Defense 15: Competition.** This affirmative defense appears to be a response to RBG's claim that Webstaurant has violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq. See* First Am. Compl. ¶¶ 57–61. The Act prohibits "unfair" competition. *See* 815 ILCS 505/2. Webstaurant alleges that it was "at all times engaging in legitimate competition and acting for a legitimate business purpose." Def.'s First Am. Aff. and Counterclaims at 5. But "legitimate," without more, is 100% conclusory, and this defense relies on facts that would be in Webstaurant's possession and knowledge without the need for

14

discovery. RBG is not on sufficient notice, so this affirmative defense is stricken without prejudice.

## IV. Conclusion

RBG's motion to dismiss Webstaurant's Counterclaims 2, 3, 4, and 5 is granted. The dismissal is without prejudice because Webstaurant has not amended those counterclaims yet (having said that, the Court is skeptical that the fraud claims can be fixed). RBG's motion to strike affirmative defenses is granted with prejudice as to Affirmative Defense 10, and without prejudice as to Affirmative Defenses 9, 12, 13, and 15.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 29, 2020