UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RBG PLASTIC, LLC, d/b/a RESTAURANTWARE, | ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | No. 1:18-CV-05192 |
| v. | ) ) ) | Judge Edmond E. Chang |
| THE WEBSTAURANT STORE, d/b/a WEBSTAURANTSTORE.COM and CLARK ASSOCIATES, INC., | ) ) ) ) | |
| Defendants/Counter-Plaintiffs. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this trademark infringement case, RBG Plastic has alleged that The Webstaurant Store has infringed three of RBG's registered marks for the name "RESTAURANTWARE." Webstaurant, in turn, brought five counterclaims against RBG, alleging that the marks are invalid because they are generic or descriptive, and that they were procured by fraud against the Patent and Trademark Office.[1] Back in November 2020, the Court granted RBG's motion to dismiss the four counterclaims that were based on fraud allegations, and also dismissed several of Webstaurant's affirmative defenses (specifically, Affirmative Defenses 9, 10, 12, 13, and 15). R. 210, Mem. Op. and Order. Those dismissals were without prejudice, except for Affirmative Defense 10, which was dismissed with prejudice. *Id.* Webstaurant has now amended its pleading to assert a total of 14 affirmative defenses and five counterclaims. R. 230,

---

[1]Because this case arises under the Lanham Act, this Court has subject matter jurisdiction over the federal law claims under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over RBG's state law claims under 28 U.S.C. § 1367.

1

Def.'s Second Am. Affirmative Defenses and Counterclaims. RBG has again moved to dismiss the four counterclaims (numbers 2–5) and two affirmative defenses (8 and 11) that allege fraud. R. 236, Pl.'s Mot. to Dismiss. The Court again holds that the fraud-based counterclaims and affirmative defenses are insufficiently pleaded, and grants RBG's motion in full for the reasons explained below. This time, the dismissals are with prejudice.

## I. Background

RBG Plastic owns three registered trademarks for "RESTAURANTWARE." The first, U.S. Trademark Registration No. 5,293,708, covers "On-line retail store services featuring preparation, serving, and dining supplies for the food service industry." R. 90, First Am. Compl. ¶ 19. The second, No. 5,293,709, covers "Bowls; Compostable and biodegradable plates, bowls, cups and trays; Cooking pans; Cooking skewers; Disposable dinnerware, namely, cups, bowls, plates, and saucers; Drinking vessels; Serving bowls (hachi); Serving dishes; [and] Serving trays." *Id*. ¶ 18. The third, No. 5,283,420, covers "Compostable and biodegradable cutlery, namely, knives, spoons, forks; Disposable tableware, namely, knives, forks and spoons; Plastic cutlery, namely, knives, forks, and Spoons." *Id*. ¶ 17.

All three marks were prosecuted before the Patent and Trademark Office in 2016 and 2017. R. 107, Def.'s First Am. Aff. Defenses and Counterclaims to Pl.'s First Am. Compl. ¶¶ 18, 20–24, 34–38, 48–52. In response to RBG's claims of infringement of its valid marks, *see* First Am. Compl. ¶¶ 36–61, Webstaurant alleged in both its first and second amended affirmative defenses and counterclaims that, despite the

2

fact (as Webstaurant sees it) that "restaurant ware" and "restaurantware" are widely used within the restaurant industry and even beyond, RBG falsely and fraudulently sought to represent its use of "RESTAURANTWARE" as distinctive (that is, not descriptive or generic). *See* First Am. Aff. Defenses and Counterclaims ¶¶ 14–63; Second Am. Aff. Defenses and Counterclaims ¶¶ 14–68. The pleadings have a very similar structure. In the first counterclaim, which RBG did not then and does not now seek to dismiss, Webstaurant alleges simply that the trademarks are invalid because they are descriptive or generic. Second Am. Aff. Defenses and Counterclaims ¶¶ 14–16. But Counterclaims 2, 3, and 4 allege that RBG procured each of the three trademarks, respectively, by various fraudulent misrepresentations to the Patent and Trademark Office. *Id.* ¶¶ 17–36, 37–51, 52–65. Counterclaim 5 seeks civil damages for the conduct alleged in Counterclaims 2 through 4. *Id.* ¶¶ 66–68.

Webstaurant also re-pleads a variety of affirmative defenses: (1) fair use; (2) innocent infringement; (3) statute of limitations; (4) laches; (5) generic terms; (6) lack of secondary meaning; (7) waiver, acquiescence, and estoppel; (8) unclean hands; (9) failure to mitigate; (10) trademarks not an indicator of source; (11) fraud; (12) third-party use; (13) invalidity; and (14) competition. Second Am. Aff. Defenses and Counterclaims at 1–5. RBG challenges numbers 8 and 11, which allege fraud, as inadequately pleaded. Pl.'s Mot. to Dismiss.

Indeed, the Court had already dismissed Webstaurant's substantially identical fraud-based counterclaims and affirmative defenses as insufficiently pleaded under the heightened pleading standard of Federal Rule of Civil Procedure 9(b). R. 210,

3

Mem. Op. and Order at 5, 13. (It should be noted that RBG did not previously move to dismiss the eighth affirmative defense, unclean hands, despite at least part of that defense relying on a fraud allegation. This motion provides the Court its first opportunity to evaluate the sufficiency of that pleading.) The prior Opinion explained that Webstaurant's allegations of fraud were insufficient because they did not allege that RBG made any false statements of *fact*, and rather were drawn only from *argument* presented by RBG's attorney of record in RBG's trademark registration filings submitted to the Patent and Trademark Office. *See id.* at 7. Though Webstaurant argues that new allegations it has added to its second amended pleading solve that problem, *see* R. 259, Def.'s Resp., at 2 (citing Def.'s Second Am. Aff. Defenses and Counterclaims at ¶¶ 25–26, 28–30, 40–41, 43–45, 54–55, 57–59), as this Opinion discusses below, most of the new allegations are similarly drawn from RBG's legal arguments before the Patent and Trademark Office rather than alleging any false statements of fact, and the remaining fact-based allegations are too sparsely pleaded to clear the hurdle of Rule 9(b).

## II. Standard of Review

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

4

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 679.

Ordinarily, under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But claims alleging fraud must also satisfy the heightened pleading requirement of Federal Rule of Civil Procedure Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). Thus, Rule 9(b) requires that Webstaurant's counterclaims "state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (cleaned up).[2] Put differently, its complaint "must describe the who, what, when, where, and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (cleaned up).

---

[2]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

5

III. Analysis

A. The Fraud Counterclaims

RBG has again moved to dismiss four of Webstaurant's five counterclaims, alleging that they fail to adequately state a claim. Fed. R. Civ. P. 12(b)(6). Each of these claims is premised on fraud allegations, and thus each is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). For a second time, none clears that bar.

The first targeted counterclaim is again Counterclaim 2. In that counterclaim, Webstaurant alleges that RBG defrauded the Patent and Trademark Office in procuring mark number 5,293,708. Second Am. Aff. Defenses and Counterclaim ¶¶ 17–36. In its first go-round on this counterclaim, Webstaurant offered two reasons why RBG's application was fraudulent: first, although RBG's application said that it did not "seek[] to register the mark for sales within the restaurant or hotel industry," First Am. Aff. Defenses and Counterclaims, ¶ 18, Exh. A, this was allegedly untrue because RBG's website, in Webstaurant's view, in fact "claims that it has been a leading restaurant supply manufacturer and ecommerce supplier since 2010." First Am. Aff. Defenses and Counterclaims, ¶ 19, Exh. B. In support of this allegation, Webstaurant quoted the following excerpt from RBG's website: "At Restaurantware, we're committed to leading the way for environmentally conscious businesses within the food and beverage industry. Since 2010, Restaurantware has been a leading restaurant supply manufacturer and e-commerce company serving foodservice professionals

6

across the globe." *Id*. The new pleading recaps these allegations. Second Am. Aff. Defenses and Counterclaims ¶ 19 and Exhs. B–E, K.

In the prior opinion, R. 210, the Court held that the counterclaims failed for two main reasons. First, Webstaurant had not alleged that RBG made any false statements of *fact*. All of Webstaurant's allegations are drawn from *argument* presented by RBG's attorney of record, who was (naturally) attempting to convince the Patent and Trademark Office that "RESTAURANTWARE" was worthy of trademark registration. Each of the targeted statements was properly characterized as an *argument* that a certain set of facts satisfies a particular registration element as a matter of law. For example, whether a mark is generic or descriptive, or whether particular other uses of the term undermine whether RBG was using the mark on a *substantially* exclusive basis, are all issues that apply the legal registration element to a particular set of facts. And none of the targeted statements were concrete facts that can form the premise of a fraud claim. It is of course possible to allege fraud in the procurement of a trademark when the applicant submits false *facts*. But that was not the case here. Perhaps the Patent and Trademark Office made a mistake in granting protection to the RESTAURANTWARE mark, but that is the issue in Counterclaim 1. In short, there were no targeted facts that can subject RBG to liability for fraud. Webstaurant's task in Round Two was to plead such facts, if they existed. Webstaurant once again has not done so.

Webstaurant again takes issue with RBG's representation to the Patent and Trademark Office, via its attorney of record, that the RESTAURANTWARE mark

had become distinctive through RBG's "substantially exclusive and continuous use." Second Am. Aff. Defenses and Counterclaims ¶ 25; *see also* First Am. Aff. Defenses and Counterclaims ¶ 20. In reality, Webstaurant again argues, RBG's own allegations in Paragraph 32 of its First Amended Complaint show that this was false and that RBG knew of the falsity, though Webstaurant offers additional factual allegations this time. Webstaurant now alleges that "Upon information and belief, RBG also knew of others' use of 'RESTURAUNTWARE' and/or 'RESTAURANT WARE' prior to November 2016 [when it filed its application]. As evidenced by Exhibits B–E[,] the terms 'RESTURAUNTWARE' and/or 'RESTAURANT WARE' were widely used by third parties to refer to products covered by the RBG Registrations, including prior to November 2016. RBG was aware of such use by Defendants and other third parties prior to November 2016. (Exhibit K)." Second Am. Aff. Defenses and Counterclaims ¶ 22. Webstaurant also submits several exhibits purporting to show the use of the term "restaurant ware" (though as two words, not one) in the 2009 Harmonized Tariff Schedule of the United States, Exh. B; in an eBay search, Exh. C; and in two searches of Target's website, Exh. D and Exh. E.

This comes the closest of any of Webstaurant's new allegations to satisfying the Rule 9(b) standard, but again misses the mark. The essence of the allegations in ¶ 22 is that RBG *must have known*, as a matter of fact, of others' use of the marks simply because this use was supposedly widespread. At the outset, this allegation requires a substantial inference, drawing a line from the purportedly widespread usage to RBG's actual knowledge that its use was not substantially exclusive.

8

Inferences of course are not forbidden in 9(b) territory, but this one is not supported by enough factual allegations. "Wide use by third parties" is not a concrete factual allegation as demanded by Rule 9(b); it is again closer to a conclusory assertion. And the exhibits submitted do not actually show that others used the RESTAURANT-WARE mark, which is *one* word; rather, they (at best) show that others were using "restaurant ware" and other similar two-word phrases.[3] Without more factual specificity in the allegation, the Court cannot draw a reasonable inference that RBG in fact knew of this usage, considered the usage as fatally undermining an assertion of substantial (not complete) exclusivity to the one-word mark RESTAURANTWARE, and then went on to deny that knowledge to the Patent and Trademark Office with deceptive intent.

Webstaurant also makes much of new allegations that, Webstaurant says, adequately plead facts suggesting that RBG knew it did not have substantially exclusive use of the mark at the time it submitted the application. Def.'s Resp. at 6–10. As a threshold matter, RBG's assertions of substantially exclusive use are not factual assertions in the way that Webstaurant suggests they are. Webstaurant relies on *L.D. Kichler Co. v. Davoil, Inc.* for the proposition that substantially exclusive use is always a question of fact rather than of legal argument. 192 F.3d 1349, 1352 (Fed. Cir. 1999). But *Kichler* is not squarely on point and does not support Webstaurant's

---

[3]In pursuing this analysis the Court is not implying that "restaurant ware," as two separate words, is or is not in fact a protected trademark. RBG has alleged that "restaurant ware" is confusingly similar to RESTAURANTWARE. R. 90, First Am. Compl. ¶ 14. This remains a contested issue in the case, which the Court need not yet decide.

9

arguments.[4] First, the *Kichler* opinion does not state in detail what the factual allegations before the district court were, so it is unclear how this Court can meaningfully compare them with the allegations at stake here. Second, *Kichler* makes clear that in order to cancel a mark for fraud, there must not only have been "significant" use by others, but also that the mark holder "knowingly submitted a false declaration with an intent to deceive." *Id.* A declaration of substantially exclusive use can, of course, be the basis for a fraud claim under certain circumstances. If a new hamburger fast-food chain were to assert today that it has substantially exclusive use of McDonald's as a mark for the chain's service, then no amount of wiggle room in the word "substantially" would save it from facing a fraud claim. But here—with the one-word mark RESTAURANTWARE—the mere use of the mark by other parties does not necessarily undermine the claim that the registrant's use was *substantially* exclusive (which, after all, is not the same thing as *completely* exclusive use). *Substantial* exclusivity is, again, a legal conclusion to be drawn from all the facts. And Webstaurant's allegation that the Patent and Trademark Office does not consider the declaration to be attorney argument, *see* Def.'s Second Am. Aff. Defenses and Counterclaims ¶ 26, does not make it otherwise. The language of the excerpted statement applies to false statements of *fact*.

---

[4]Webstaurant also relies on *Galperti, Inc. v. Galperti S.r.l.*, 791 Fed.App'x 905 (Fed. Cir. 2019). This unpublished case, in a different procedural posture, is likewise unhelpful. In *Galperti*, the trademark owner outright testified in a deposition that she knew about the other use of the mark. *Id.* at 909–10.

10

Nor does other parties' use of the mark necessarily mean that RBG "knowingly submitted a false declaration with an intent to deceive." *L.D. Kichler Co.*, 192 F.3d at 1352. Webstaurant's reliance on RBG's legal argument that the RESTAURANT-WARE mark had acquired distinctiveness through substantially exclusive use, *see* Def.'s Second Am. Aff. Defenses and Counterclaims ¶ 25, does not sufficiently allege factual information to support even an inference that RBG's use was not in fact substantially exclusive or that RBG intentionally sought to deceive the Patent and Trademark Office in making that argument. The bare allegation that "RBG knew at the time the declaration was made that it did not have substantially exclusive use of the mark in commerce for the referenced time period," *id.*, does not clear the "who, what, when, where, and how" standard generally required for successful pleading under Rule 9(b). *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust*, 631 F.3d at 441–42.

Relying on similar allegations, Counterclaim 3 alleges that RBG's trademark number 5,293,709 was also procured by fraud. Second Am. Aff. Defenses and Counterclaims ¶¶ 37–51. Webstaurant again points to the representation by RBG's attorney in which RBG said that the RESTAURANTWARE mark had acquired distinctiveness through substantially exclusive use. *Id.* ¶ 40, 43. This was patently false, Webstaurant argues, "because the mark had not become distinctive and RBG knew at the time the declaration was made that it did not have substantially exclusive use of the mark in commerce for the referenced time period." *Id.* Webstaurant recapitulates its bare allegations that RBG "knew the statements … were false at the time

11

they were made and were submitted with the willful intention to deceive the USPTO," *id.* ¶ 45, with no supporting factual allegations. Webstaurant again alleges that the Patent and Trademark Office does not consider declarations submitted in support of trademark registration applications to be attorney argument. *Id.* ¶ 41. Counterclaim 4, which challenges trademark number 5,283,420, is almost exactly identical to Counterclaim 3. *See id.* ¶¶ 52–65.

At this stage of the litigation, again there simply is nothing in the counterclaims' allegations to suggest—especially when measured against the heightened pleading standard in Rule 9(b)—that RBG committed fraud in procuring the registrations. So Counterclaims 2, 3, and 4 are again dismissed for those reasons. Counterclaim 5, which seeks civil damages for the allegedly false or fraudulent registration of these trademarks under 15 U.S.C. § 1120, is dependent on the viability of Counterclaims 2, 3, and 4. So Counterclaim 5 is again dismissed as well. Because this was at minimum Webstaurant's second attempt at pleading fraud, this time the dismissal is with prejudice.

### B. Affirmative Defenses

In its previous opinion on these counterclaims and affirmative defenses, the Court declined to apply the plausibility pleading standard of *Twombly* and *Iqbal* to affirmative defenses generally, on the grounds that "a close comparison of Civil Rule 8's textual treatment of claims versus affirmative defenses dictates that affirmative defenses are subject to a *lower* pleading standard than claims." R. 210 at 8–11 (emphasis in original). But the Court also held, and reiterates now, that the plain

12

language of Civil Rule 9(b) does not limit the heightened-pleading requirement that in "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake" to the pleading of claims for relief. The high bar of Rule 9(b) therefore applies to affirmative defenses alleging fraud. As explained next, the fraud allegations in Webstaurant's eighth and eleventh affirmative defenses are too sparsely pleaded to survive. They are dismissed with prejudice.

**Affirmative Defense 8: Unclean Hands.** Webstaurant's eighth affirmative defense reads in full:

> Plaintiff's claims are barred by the doctrine of unclean hands. Plaintiff's conduct is inequitable. Plaintiff engaged in a concerted effort to impede the free descriptive use of "restaurantware" and "restaurant ware" in order to wrongfully obtain a competitive advantage in the restaurant supply industry. Plaintiff's efforts to prevent third party use of "restaurantware" and "restaurant ware" are intended to prevent competitors from using terms which the trademark owner, Plaintiff, knows to be generic or merely descriptive.
>
> Plaintiff further alleges that Defendants' misconduct began in 2011, and delayed filing this lawsuit until 2018. Further, Plaintiff sent Defendants a cease and desist letter on the same day that it filed this lawsuit. In addition, for the facts and reasons set forth in Defendants' Counterclaim below, the claims made in the Amended Complaint are invalid and barred, in whole or in part, by Plaintiff's fraud on the United States Patent and Trademark Office ("USPTO").

Def.'s Second Am. Aff. Defenses and Counterclaims at 3. RBG's motion to dismiss mostly targets the last sentence, which incorporates the fraud allegations in Webstaurant's counterclaims. Mot. to Dismiss at 5, 8–11. That sentence explicitly incorporates and relies on the "facts and reasons" supporting the fraud allegations in the counterclaims. The Court has already discussed why those allegations are insufficiently pleaded, and the affirmative defense adds nothing new. So the last sentence

13

is stricken with prejudice for the same reasons that the fraud-based counterclaims are dismissed with prejudice. The preceding sentences, however, do not allege fraud and are subject to the much lower pleading standard of Rule 8(c). Moreover, RBG does not seek to dismiss the other aspects of Affirmative Defense 8. So those parts survive.

**Affirmative Defense 11: Fraud.** This affirmative defense fails for the same reason as Webstaurant's fraud-based counterclaims. It states only: "For the facts and reasons set forth in Defendants' Counterclaim below, the claims made in the Amended Complaint are invalid and barred, in whole or in part, by Plaintiff's fraud on the USPTO." Def.'s Second Am. Aff. Defenses and Counterclaims at 4. Again, Civil Rule 9(b) applies, and Webstaurant's conclusory and general statement does not clear that high bar. Because the counterclaims fail for the reasons discussed above, the affirmative defense does too. It is dismissed with prejudice.

### C. Other Arguments

The parties raise two other arguments, but they require little discussion. First, Webstaurant has made an Alternative Request for Leave to Amend, Def.'s Resp. at 15, asking that any dismissal be without prejudice. For its part, RBG argues that the Second Amended Affirmative Defenses and Counterclaims in fact represents Webstaurant's *fourth* attempt to plead fraud and is in any event untimely, coming well after the Rule 16(b) deadline to amend. Mot. to Dismiss at 13–14. The Court did grant Webstaurant's earlier motion to file this pleading, which was unopposed by RBG at the time. R. 228, 229. For the reasons discussed above, however, it is now appropriate

for the fraud-based allegations to be dismissed with prejudice. The only procedural mechanism that *might* be able to reopen these claims is a motion for leave to amend that pointed to much, much more specific evidence of fraud and made a strong argument that amendment was necessary in the interest of justice, under Civil Rule 15(a)(2). The Court is neither inviting such a motion nor hinting that it would be granted. Second, the parties also spill much ink debating theories of Article III standing injury. *See* Mot. to Dismiss at 12–13; Def.'s Resp. at 12–15. The Court need not address these arguments given the dismissals granted in this Opinion.

## IV. Conclusion

RBG's motion to dismiss Webstaurant's Counterclaims 2, 3, 4, and 5 is granted. The dismissal is with prejudice because this is Webstaurant's second attempt to plead these counterclaims. RBG's motion to strike affirmative defenses is granted as to Affirmative Defense 11, and most of Affirmative Defense 8; those dismissals too are with prejudice.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 13, 2021