# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| RBG PLASTIC, LLC, d/b/a RESTAURANTWARE, | ) ) ) | |
| Plaintiff, | ) ) | No. 1:18-CV-05192 |
| v. | ) ) | Judge Edmond E. Chang |
| THE WEBSTAURANT STORE, d/b/a WEBSTAURANTSTORE.COM, and CLARK ASSOCIATES, INC., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

RBG Plastic brought this trademark-infringement action against two companies, The Webstaurant Store and Clark Associates, Inc., alleging that they infringed on three of RBG's registered trademarks for "RESTAURANTWARE." R. 90, Amended Compl. ¶ 1.[1] RBG now brings a motion for partial summary judgment on the validity and enforceability of its registered trademark "RESTAURANTWARE." R. 330, Mot. Summ. J. at 1. For their part, the Defendants also bring their own summary judgment motion targeting RBG's state law claims and RBG's alleged failure to sufficiently prove damages. R. 362, Defs.' Mot. Summ. J at 1. Webstaurant also seeks dismissal of all claims against Clark Associates, Inc. *Id.* at 21–22. For the reasons

---

[1]Because this case arises under the Lanham Act, this Court has subject matter jurisdiction over the federal law claims under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over RBG's state law claims under 28 U.S.C. § 1367. Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

explained in this Opinion, RBG's motion for partial summary judgment is denied. Webstaurant's motion for summary judgment is granted in part and denied in part.

## I. Background

In deciding cross-motions for summary judgment, the Court views the facts in the light most favorable to the respective non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). So, when the Court evaluates RBG's summary judgment motion, Webstaurant gets the benefit of reasonable inferences; conversely, when evaluating Webstaurant's motion, the Court gives RBG the benefit of the doubt.

## A. The Parties

RBG is a company that, since 2010, provides a variety of goods and services to customers in the food and hospitality industry under the brand name Restaurant-ware. R. 335, PSOF ¶¶ 7, 10; R. 337, Bouchareb Decl. ¶¶ 3,4, 8.

According to the defense, Clark and Webstaurant are "independent companies and do not have a parent-subsidiary relationship." R. 364, DSOF ¶ 3; R. 370-4, Zeswitz Decl. ¶¶ 5–13. RBG disputes this and argues that "Pennsylvania corporate records indicate that 'The Webstaurant Store' is a fictitious corporate name and is owned by Clark Associates, Inc." R. 378, PSOAF ¶ 1; R. 384, Bouchareb Supp. Decl. ¶ 18. According to the defense, however, "Clark sources products for Webstaurant but does not sell products to consumers or sell any products online." DSOF ¶ 4, Zeswitz Decl. ¶ 12. Webstaurant sells "hundreds of thousands of products with an extremely broad breadth of products for the food service industry, including restaurant

2

equipment, appliances, supplies, tools, utensils, tableware, consumables, and other restaurant-related goods to commercial entities [.]" DSOF ¶ 5; R. 371-2, Buckwalter Decl. ¶ 3.

## B. RBG's Advertising

RBG has invested significant time and resources in expanding its online retail store, Restaurantware.com. PSOF¶ 9; Bouchareb Decl. ¶ 7. To start, in 2010, RBG spent $28,190 in advertising and promoting RESTAURANTWARE. PSOF ¶ 10; Bouchareb Decl. ¶ 8. As of 2015, in that year RBG spent $329,289.47 "producing catalogs of its products, which prominently associated its products with its brand." PSOF ¶ 13; Bouchareb Decl. ¶ 11, R. 339, RBG Catalog. By 2016, RBG's advertising and promotion budget was over $1,000,000. PSOF ¶ 12; Bouchareb Decl. ¶ 10. The defense disputes these figures in alleging that "RBG did not maintain budget allocations for marketing each year." DSOF ¶ 38; R. 370-2, Bouchareb Dep. 127:24–128:6. RBG's participation in trade shows also grew as the brand developed, including the charmingly named "Winter Fancy Food Show," which is held out as the "premier specialty food show in North America." PSOF ¶¶ 16–18; Bouchareb Decl. ¶¶ 13–15. RBG's attendance at these kinds of trade shows has been a "staple" of the company's "promotion and advertising efforts" since 2010. PSOF ¶ 23; Bouchareb Decl. ¶ 21. RBG's sales grew steadily starting at $168,186 in 2010 up to $21,558,505.20 in 2019. PSOF ¶ 28; Bouchareb Decl. ¶ 25.

## C. RBG's Trademark Registrations

RBG has obtained three trademarks in connection with the mark RESTAU-RANTWARE. First, on September 12, 2017, RBG was granted Registration Number 5283420 for the term RESTAURANTWARE as to the following cutlery goods:

> Compostable and biodegradable cutlery, namely, knives, spoons, forks; Disposable tableware, namely, knives, forks and spoons; Plastic cutlery, namely knives, forks, and Spoons.

PSOF ¶ 43; Bouchareb Decl. ¶ 5, R. 351, Trademark Registration. Second, on September 26, 2017, RBG was granted Registration Number 5293709 again for the term RESTAURANTWARE going beyond cutlery:

> Bowls; Compostable and biodegradable plates, bowls, cups and trays; Cooking pans; Cooking skewers; Disposable dinnerware, namely, cups, bowls, plats, and saucers; Drinking vessels; serving bowls (hachi); Serving dishes; Serving trays.

PSOF ¶ 44; Bouchareb Decl. ¶ 5, Trademark Registration. Third, also on September 26, 2017, RBG was granted Registration Number 5293708 for RESTAURANTWARE as to an online retail store:

> On-line retail store services featuring preparation, serving, and dining supplies for the food service industry.

PSOF ¶ 45; Bouchareb Decl. ¶ 5, Trademark Registration.

As a part of the trademark-application process, RBG identified other industry participants—US Foods, European Imports (later purchased by SYSCO), Levy Restaurants, and Gordon Food Services—which submitted letters in support of "RBG's reputation and the association of that reputation with RESTAURANTWARE." PSOF

4

¶¶ 29–30; Bouchareb Decl. ¶¶ 26–27, R. 344, Letters from Industry Participants. In-
itially, the USPTO rejected RBG's RESTAURANTWARE application, explaining that
the term is "merely descriptive" and it "appears to be generic in connection with the
identified goods, and, therefore, incapable of functioning as a source-identifier for ap-
plicant's goods." DSOF ¶ 25; R. 370-12, Exh. 11.4 at CLARK002149; R. 370-20, EXH.
12.4 at CLARK001507; R 370-28, Exh. 13.4 at CLARK00857. RBG amended its trade-
mark applications and sought registration under the distinctiveness provision in 15
U.S.C. § 1052(f), asserting that the term had "acquired distinctiveness based on five
years' use in commerce." DSOF ¶ 26; *see* Office Action, R. 370-13–15, 11.5–11.7;
R. 370-21–23, Exh. 12.5–12.7; R. 370-29–31, Exh. 13.5–13.7. The amended applica-
tion was successful: RBG ultimately received registrations for RESTAURANTWARE
under § 1052(f). DSOF ¶ 28; R. 370-9, Exh. 11.1; R. 370-17, Exh. 12.1; R. 370-25, Exh.
13.1; R. 378, RBG Resp. to DSOF ¶ 27.

According to RBG, no other company in the food or hospitality industry uses
the term "restaurantware" nor can the term be found in the dictionary. PSOF ¶¶ 50–
51; Bouchareb Decl. ¶¶ 30–31, 33, 56–58. But Webstaurant argues that RBG's use of
"restaurantware" "was not substantially exclusive between 2012 and 2017." DSOF
¶ 47; R. 370-3, Rinella Dep. at 40:18–41:14; Bouchareb Dep. at 128:17–129: 24, 195:2–
199:20.

### D. Competition between RBG and Webstaurant

RBG and Webstaurant are direct competitors within the "food service products
business, serving large and small businesses and individuals." PSOF ¶ 38; Bouchareb

5

Decl. ¶ 6. But Webstaurant disputes that RBG is one of its competitors. DSOF ¶ 18. Webstaurant "advertises its products primarily by purchasing many online search terms to display paid advertisements when the keyword is searched so as to direct customers to its website." DSOF ¶ 6; Buckwalter Decl. ¶ 4. Clark Associates uses "pay-per-click 'campaigns' to maximize its presence in web browser search results." PSOF ¶ 39; R. 336, Philbrick Decl. ¶ 2, Exhs. A–B. Webstaurant uses "keywords and phrases tied to the 'restaurant' industry, such as 'restaurant equipment' and 'restaurant supply.'" DSOF ¶ 8; Buckwalter Decl. ¶ 6. For example, many of the keywords Webstaurant purchased are meant to describe the classes and types of goods that Webstaurant sells, such as plateware, disposable silverware, disposable flatware, disposable tableware, etc. DSOF ¶ 9; Buckwalter Decl. ¶ 8; R. 371-3, Webstaurant's May 28, 2021, Second Supp. Resp. to Interrogatory No. 3.

One of Clark's campaigns was named the "Heavy Traffic Campaign," and another was called the "Competitor Campaign." PSOF ¶ 40; Philbrick Decl. ¶ 2, Exhs. A, B. As part of the Competitor Campaign, Clark purchased the keyword "restaurant-ware.com" on August 13, 2015. PSOF ¶¶ 41–42; Philbrick Decl. ¶ 2, Exhs. A, B. Webstaurant alleges that it purchased the keywords "restaurant ware" and "restaurant-ware" "because Webstaurant offers for sale restaurant-related 'wares,' such as table-ware products." DSOF ¶ 12; Buckwalter Decl. ¶ 11. RBG acknowledges that using a competitor's "trademarks solely in keyword advertising is commonplace and is not considered trademark infringement." R. 378, Pl.'s Resp. to DSOF ¶ 17.

6

The defense asserts that RBG sent the Defendants a cease-and-desist letter concerning "all use of RESTAURANTWARE in its online advertising campaigns and for disgorgement of all profits." DSOF ¶ 13; R. 370-5, Jul. 30, 2018, Letter to Defs. On the same day, RBG filed this case for trademark infringement. *Id.* The defense alleges that their "first notice" of RBG's trademark registrations for "RESTAURANTWARE was not received until July 30, 2018. DSOF¶ 14. Webstaurant asserts that RBG knew of its use of "RESTAURANTWARE" "since at least as early as 2014." DSOF ¶ 31; Bouchareb Dep. 128:17–129:21; 132:20–133:2. With regard to Clark Associates, RBG notes that the cease-and-desist letter was sent to the Office of the General Counsel for Clark Associates, and that Clark's CFO, Mark Zeswitz, responded by confirming that Clark had removed "all use of 'RESTAURANTWARE'" in their advertising programs. PSOAF ¶ 3.

The defense's expert, Thomas Maronick, conducted a survey concerning "consumers' perception of 'RESTAURANTWARE'" and found, among other things, a majority of respondents allegedly recognized RESTAURANTWARE as a common word:

> significant majority of respondents in the target market for restaurant-related non-food products or equipment (i.e., 54.0%) believe 'Restaurantware' is a common word and not a brand name. Moreover, among respondents who have an opinion (i.e., excluding those who said 'don't know'), 68.8% believe 'Restaurantware' is a common word and not a brand name.

DSOF ¶ 49; R. 370-51, Corrected Maronick Report ¶ 11. The defense further disputes the validity of the RESTAURANTWARE mark, contending that RBG "used the term 'restaurant wares' generically to identify a category or type of good on its website in

stating 'Subscribe to receive coupon specials, updates and tips on great **restaurant wares.**'" DSOF ¶ 52 (emphasis in original); R. 370-54, Screenshot of RBG Website at CLARK003628.

### E. Actual Confusion

RBG alleges there have been instances of actual confusion between customers of RBG and those of the Defendants. PSOAF ¶ 32. On one occasion, a customer asked the Defendants "for a RBG product by RW### SKU number and is directed to Restaurantware.com website." PSOAF ¶ 33; R. 386-17, Philbrick Supp. Decl. at Clark 2835. On another occasion, "an RBG customer ask[ed] about an order, which Defendants' chat person determine[d] was actually placed through Restaurantware." PSOAF ¶ 32; R. 386-15, Philbrick Supp. Decl. at Clark 2805. RBG presented other examples of customers who confused RBG with Webstaurant. PSOAF ¶ 40; Bouchareb Supp. Decl. ¶¶ 19–21; R. 384-2–4. For example, in an email thread where "'Joe from Beverage Express' inquired about purchasing a large quantity of cups each week, but the specific products Joe was looking for came from the webstaurantstore website." PSOAF ¶ 41; Bouchareb Supp. Decl. ¶ 19.

### F. Damages

RBG's expert, Chris Smith, alleges that RBG's damages are over $8.1 million "based solely on the total revenue from the 'initial sales' and 'subsequent sales' reported in Webstaurant's original sales order history report." DSOF ¶ 69; R. 371-26, Webstaurant's Original Sales Report; R. 371-28, Smith Report ¶¶ 72, 82, 95. The original sales report identified the original-transaction gross revenue to total $211,953

8

and the subsequent transactions gross revenue to total $7,900,903 for a grand total of $8,112,856. DSOF ¶ 75, Webstaurant's Original Sales Report at CLARK0003573. The corrected sales report identified the original transactions of gross revenue to be the same amount, but the "subsequent transactions for First-Time Customers" to be $138,856. DSOF ¶ 75; R. 371-27, Webstaurant's Corrected Sales Report at CLARK0003667. This brings the total of gross revenue in the corrected report to $350,809. *Id.* This sales report and the corresponding corrected report, "included orders that results from using the asserted mark as a search engine keyword even though the ad copy did not include the asserted mark." DSOF ¶ 72; Buckwalter Decl. ¶ 14.

## II. Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment

9

has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

In deciding cross-motions for summary judgment, the Court views the facts in the light most favorable to the respective non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). So, when the Court evaluates RBG's summary judgment motion, Webstaurant and Clark Associates, Inc. get the benefit of reasonable inferences; conversely, when evaluating Webstaurant and Clark Associates, Inc.'s motion, the Court gives RBG the benefit of reasonable inferences.

## III. Analysis

### A. Suggestive versus Descriptive with Secondary Meaning

As explained earlier in this Opinion, RBG has three registered trademarks for "RESTAURANTWARE," granted by the United States Patent & Trademark Office. R. 334, Pl.'s Br. at 5. "For a mark registration to be valid, it must be distinctive in one of two ways." *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 419 (7th Cir. 2019). The first path to a valid registration is if the mark is "inherently distinctive, meaning, it identifies the maker of a product, but it does not describe the product itself." *Id.* at

420. (cleaned up).[2] The second path to a valid registration is where the "descriptive terms can become distinctive by acquiring a secondary meaning." *Id.* (cleaned up). This means "the mark has grown distinctly and uniquely associated with the original seller." *Id.* (cleaned up).

Just as a mark can be valid in one of two ways, the "Lanham Act extends 'one of two' presumptions—either that the mark is inherently distinctive or that it has acquired distinctiveness." *Id.* at 424; *see also Sturgis Motorcycle Rally v. Rushmore Photo & Gifts*, 908 F.3d 313, 322 (8th Cir. 2018) (explaining that there is a concession that a mark is not "inherently distinctive" when a trademark holder submits evidence under Section 2(f) of the Trademark Act to show that a mark has acquired secondary meaning.). The USPTO concluded that RBG's mark, "RESTAURANTWARE" was descriptive but had acquired secondary meaning, so the presumption of validity only applies to the finding of *secondary meaning*. Pl.'s Br. at 2; DSOF ¶¶ 26, 28. What's more, RBG has failed to present any legal authority to support the idea that a § 1052(f) registration imbues the mark with a presumption of validity on its suggestiveness or inherent distinctiveness—as opposed to a narrower presumption of validity on secondary meaning. R. 379, RBG Resp. and Reply at 13–14. RBG's motion for summary judgment as it relates to the presumption of validity of the mark's inherent *distinctiveness* is denied. As explained next, the evidence (viewed in the light most

---

[2]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

favorable to the defense) would allow a factfinder to conclude that the term restaurantware is nothing more than a generic mark (though it can go the other way when the evidence is viewed in RBG's favor, so neither side wins summary judgment on validity).

## B. Descriptive with Secondary Meaning

For its part, Webstaurant challenges the validity of RBG's mark, arguing that it is generic or, at best, descriptive without secondary meaning. R. 362, Defs.' Resp. at 3. Even a presumption of validity can be overcome "as soon as evidence of invalidity is presented." *Door Systems v. Pro-Line Door Systems*, 83 F.3d 169, 172 (7th Cir. 1996). The Seventh Circuit distinguished generic marks from descriptive marks in *Platinum Home Mortg. Corp. v. Platinum Financial Group, Inc.*: first, a generic term is simply the common word for the good or service and gets zero protection:

> A generic term is one that is commonly used and does not identify any particular source and therefore, is not entitled to any trademark protection.

149 F.3d 722, 727 (7th Cir. 1998). Moving on to descriptive marks, those marks describe some characteristic of the good or service and typically do not deserve protection—unless the descriptive mark has acquired secondary meaning:

> A descriptive mark is one that "describes the ingredients, qualities, or characteristics of an article of trade or a service" and, generally, it is not protected as a trademark because a merely descriptive mark is a poor means of distinguishing one source of services from another." However, a descriptive mark may receive trademark protection if it acquires secondary meaning "in the collective consciousness of the relevant community."

12

*Id.* (cleaned up). Courts consider various factors when evaluating whether a mark is generic, including: (1) competitors' use; (2) plaintiff's use; (3) dictionary definitions; (4) media usage; (5) testimony of persons in the trade; and (6) consumer surveys. *Ty, Inc. v. Jones Group, Inc.*, 98 F.Supp.2d 988, 994 (N.D. Ill. 2000).

Here, there are enough material, factual disputes concerning the validity of the "RESTAURANTWARE" mark when the evidence is viewed in the light most favorable to the non-moving party. In considering RBG's motion, Webstaurant has presented substantial evidence discrediting the validity of the mark. Most importantly, Webstaurant's expert, Thomas Maronick, conducted an empirical analysis of consumers' perception of the term RESTAURANTWARE through a survey. Defs.' Resp. at 6. The survey results revealed 54% of respondents believed "RESTAURANTWARE" is a "common word and not a brand name." DSOF ¶ 49. RBG did not conduct a survey of its own and only challenges the survey to the extent that "54% is not a 'significant majority' for purposes of identifying a common word" in contrast to "truly significant majorities" for words like "silverware, cookware, flatware, and dinnerware. Pl.'s Resp. to DSOF ¶ 49. But in the light most favorable to the defense, a jury could readily rely on the survey to find that the term is generic.

On the other hand, when considering Webstaurant's motion, RBG has presented evidence supporting a factual finding that the mark is descriptive and has acquired secondary meaning. RBG points to its consistent increase in advertising and promotion expenditures for the RESTAURANTWARE brand from 2010 through

2019, PSOF ¶ 23; Bouchareb Decl. ¶ 21, including exceeding $1,000,000 by 2016, PSOF ¶ 12; Bouchareb Decl. ¶ 10. RBG also offers evidence of its alleged exclusive use of the mark and unsolicited media coverage of the brand. Pl.'s Br. at 14–15; *see* PSOF ¶¶ 36, 51–52, 46; Bouchareb Decl. ¶¶ 39, 32, 28; Bouchareb Decl. ¶¶ 30, 31, 33. Webstaurant disputes RBG's exclusive use by offering competing evidence of "numerous companies" that have used the term "restaurantware" or "restaurant ware" (as two words) for their own advertisements. Defs.' Resp. at 4; DSOF ¶¶ 12–13, 31, 51, 52, 59–64; Webstaurant's Second Supp. Response to Interrogatory No. 3; R. 370-53, Wikipedia entry; RBG Website; Rinella Dep.: 40:18–41:14; Bouchareb Dep.: 195:2–199:20; R. 370-55, Etsy Website; R. 370-56, eBay website; R. 370-57, CollectorsWeekly.com website; R. 370-58, Rubylane.com website; R. 370-59, Restaurant Jargon/Restaurant Terminology page; R.370-61–69, Issued Patents and Patent Applications; R. 370-70, United States 2010 Harmonized Tariff Schedule at CLARK002586.

In sum, there is competing evidence supporting a finding of validity or, in contrast, invalidity of the mark "RESTAURANTWARE." So the Court denies RBG's motion for summary judgment on validity and also denies Webstaurant's motion for summary judgment on invalidity.

### C. Infringement

To satisfy a claim for trademark infringement, the trademark holder must establish that "(1) its mark is protectable and (2) the defendant's use of the mark is likely to cause confusion among consumers." *SportFuel v. PepsiCo*, 932 F.3d 589, 595 (7th Cir. 2019). In this case, it had been the Court's impression—until the filing of

14

the summary judgment motions—that there were two theories of liability for infringement. The first theory targeted Webstaurant's purchase of the mark "RESTAU-RANTWARE" for use as a keyword for advertising. Defs.' Resp. and Br. at 16.[3] It is on this theory of liability that Webstaurant moved for summary judgment. *Id.* The second theory challenges Webstaurant's use of the actual mark on the face of the company's advertisements, but this theory was not addressed by either party in their summary judgment motions. *See* Defs.' Reply at 9.

Webstaurant argues that purchasing the keyword "RESTAURANTWARE" to cause Webstaurant's own advertisements to appear is not trademark infringement. Defs.' Resp. and Br. at 16. There have been some decisions—though none controlling in this District—in which the court held that purchasing a term for the purpose of search-engine advertising is not likely to cause confusion (and thus would not result in infringement). *1-800 Contacts, Inc. v. Lens.com, Inc.*, 755 F.Supp.2d 1151, 1173 (D. Utah 2010); *Gen. Steel Domestic Sales v. Chumley*, 2013 WL 1900562, at *9 (D. Colo. May 7, 1013); *Passport Health v. Avance Health Sys.*, 2018 WL 6620914, at *5

---

[3]*Rescuecom v. Google*, provides a helpful explanation of this keyword-purchasing activity: "AdWords is Google's program through which advertisers purchase terms (or keywords). When entered as a search term, the keyword triggers the appearance of the advertiser's ad and link. An advertiser's purchase of a particular term causes the advertiser's ad and link to be displayed on the user's screen whenever a searcher launches a Google search based on the purchased search term. Advertisers pay Google based on the number of times Internet users "click" on the advertisement, so as to link to the advertiser's website. For example, using Google's AdWords, Company Y, a company engaged in the business of furnace repair, can cause Google to display its advertisement and link whenever a user of Google launches a search based on the search term, 'furnace repair.' Company Y can also cause its ad and link to appear whenever a user searches for the term 'Company X,' a competitor of Company Y in the furnace repair business." 562 F.3d 123, 125–26 (2d Cir. 2009).

15

(E.D.N.C. Dec. 18, 2018). But none of those cases outright hold that there is a *blanket* rule for whether using a mark in a keyword purchase is definitively infringement or definitively not infringement. That is not surprising, given that factual context matters, especially because keyword purchasers use the keywords in various ways after a potential customer views the search-engine results. And there certainly is no such blanket rule either way within the Seventh Circuit. Having said, that, RBG failed to oppose—and even seems to agree with—Webstaurant's contention that, as a matter of law, a purchased keyword is not likely to cause confusion. Pl.'s Reply and Resp. at 18. So Webstaurant's motion for summary judgment as to the keyword purchase of "RESTAURANTWARE" for advertising purposes is granted and this theory of liability is dismissed from the case. That said, the other theory of liability—the use of the mark on the face of Webstaurant's advertisements—remains in the case, as neither party's summary judgment motion addressed it. So the infringement claim, limited to this theory, remains intact for trial.[4]

### 1. Clark Associates, Inc.

Next, the Defendants argue that Clark Associates and Webstaurant are independent companies and that Clark never used the marks at issue in this case. Defs.' Resp. and Br. at 22. This argument too cannot be resolved at summary judgment.

---

[4]Relatedly, the defense's attempt to limit damages based on the applicable statute of limitations is a fact-intensive inquiry, so this too remains an issue for the jury. The statute-of-limitations argument turns on whether RBG can establish a "continuing wrong," that is, an infringement within the limitations period. *See Taylor v. Meirick*, 712 F.2d 1112, 1118–19 (7th Cir. 1983). If the answer is yes, then RBG will be able to reach back and claim damages for the entire duration of the alleged infringement. *See id.* at 1119.

Viewed in the light most favorable to RBG, the Webstaurant Store is outright owned by Clark Associates, Inc. PSOAF ¶ 1; Supp. Bouchareb Decl.¶ 18. Indeed, when RBG sent the July 30, 2018, cease-and-desist letter to Clark Associates, the company did not disclaim involvement in the use of the mark. Instead, Clark's CFO, Mark Zeswitz, responded by confirming that Clark had removed "all use of 'RESTAURANTWARE'" in their advertising programs. PSOAF ¶ 3. That fact alone is enough to infer—when viewed in RBG's favor—that Clark had sufficient control over Webstaurant's use of the RESTAURANTWARE trademark to be held liable for infringement. Clark Associates remains in the case as a named defendant.

### D. Uniform Deceptive Trade Practices Act & Consumer Fraud Act

Moving on to the state law claims, Webstaurant's motion for summary judgment against the Uniform Deceptive Trade Practices Act claim and the Illinois Consumer Fraud and Deceptive Trade Practices Act claim is granted. To prevail on these Illinois state law claims, RBG must show that the violative transactions took place "primarily and substantially in Illinois." *Barbara's Sales v. Intel*, 879 N.E.2d 910, 919 (Ill. 2007). Webstaurant convincingly argues that the alleged infringements arose out of conduct that happened in Pennsylvania and was committed by Pennsylvania companies. RBG offers essentially nothing in response. The state law claims are dismissed with prejudice.

17

### E. Damages

Webstaurant also raises several arguments on damages in an effort to limit the time periods from which damages may be recovered.

### 1. Actual Notice

First, Webstaurant argues that RBG cannot seek damages from before July 30, 2018, when RBG allegedly provided actual notice to the Defendants. Defs.' Resp. and Br. at 23; DSOF ¶¶ 13–15, 32. The Lanham Act provides a limitation on remedies where a registrant (who does not provide notice of their registration through the trademark ® symbol) cannot recover profits and damages "unless the defendant had actual notice of the registration." *United States v. Sung*, 51 F.3d 92, 94 (7th Cir. 1995). But when giving RBG the benefit of reasonable inference, the record evidence supports a finding that Webstaurant was on actual notice before the July 30, 2018 cease-and-desist letter. For example, in late 2017 and early 2018, Webstaurant conducted a detailed analysis of RBG itself, RBG's website, and RBG's Pay-Per-Click practices, Suppl. Philbrick Decl., Exhs. 17, 20, 25, all of which would have put the Restaurant-ware name front and center. A member of Webstaurant's marketing department, Mark Mulkeen, presented an analysis of RBG to his supervisor on May 15, 2018, Suppl. Philbrick Decl., Exh. 16, again pre-dating the July 30, 2018, cease-and-desist letter. Clark's chief information officer, Charlie Garber, conceded that he "may have" done a trademark search on "Restaurantware," but he did not remember. Garber Dep. 192:17–19. Given these competing facts, and in light of the summary judgment standard, the date of actual notice must be reserved for trial.

18

## 2. Disgorgement of Profits

Webstaurant also challenges RBG's request for disgorgement of profits, but deciding this form of relief too must await trial. Under the Lanham Act, the district court may award a prevailing plaintiff "(1) [the] defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *4SEMO.com Incorporated v. Southern Illinois Storm Shelters, Inc.*, 939 F.3d 905, 911 (7th Cir. 2019).

Here, Webstaurant's arguments overlook the burden-shifting analysis set forth in 15 U.S.C. § 1117(a). First, the burden is on RBG to prove up the alleged infringer's sales—and RBG has done this through its expert, Chris Smith, who reported that Webstaurant had total revenue of $8.1 million dollars. Pl.'s Resp. to DSOF ¶ 69; Exh. 41, Smith Report ¶¶ 72, 82, 95. Smith is qualified to provide expert testimony on PPC and Search Engine Optimization marketing practices based on his experience: his company, Argent Media, provides (among other things) SEO consulting and PPC-advertisement management services. R. 371-28, Smith Report at 3. Smith also has been working in technology-management roles, including SEO-related work, since 2000. R. 271-28, Appx. A at 51, and has delivered various presentations on search engine strategies and marketing. *Id.*

With Smith's identification of the overall sales revenue in place, the burden then shifts to Webstaurant to reduce or to eliminate that damages amount, either by showing the costs incurred in generating the revenue or by showing that there was

no connection between the use of the infringing mark and the corresponding sales. On the latter way of reducing or eliminating profits as damages, the statute dictates that the burden is on the infringer to prove that the infringement provided no connection to the sales. *See WMS Gaming, Inc. v. WPC Productions Ltd.*, 542 F.3d 601, 608 (7th Cir. 2008) (citing *Hamilton Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 262 (1916)). Ultimately, if the infringer fails to prove costs or to undermine the connection between the infringing conduct and the sales, then the infringer risks conferring a "windfall" to the trademark owner if it is "impossible to isolate the profits which are attributable to the use of the infringing mark." *Id.*

It is true that Webstaurant has advanced some persuasive arguments to disconnect the alleged infringement from the sales. For example, the factfinder might very well find persuasive—when RBG no longer enjoys the benefit of the summary judgment standard—that the factfinder (1) should exclude sales to Webstaurant's pre-existing customers; (2) should exclude "subsequent orders" from customers who returned to Webstaurant's cite separate from entering the website right after viewing the allegedly infringing advertisement; and (3) should exclude sales of goods for which the mark was not included in the advertisement copy. Defs.' Resp. and Br. at 28–29. But the statutory burden dictates here that those arguments be made at trial.

Even with the burden-shifting framework in mind, Webstaurant does raise one particular issue with RBG's expert that is worthy of brief discussion now. Expert testimony is generally admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."

20

Fed. R. Evid. 702(a). To allow expert testimony, generally speaking the district court must find that (1) the expert is proposing to testify based on valid scientific, technical, or other specialized knowledge, and (2) the testimony will assist the trier of fact to understand or determine a fact in issue. *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 420 (7th Cir. 2005).

To repeat, RBG does not bear the burden of showing the amount of Webstaurant's costs and showing that the use of the mark generated a particular sale. That said, if Webstaurant offers evidence on costs and the allocation of those costs, then it might very well be that RBG's expert-opinion response will not be persuasive. To the extent that Smith's damages opinion is based on his "personal sense of fairness," DSOF ¶ 71, that aspect of the opinion is not likely to satisfy Evidence Rule 702's requirement that the opinion be based on specialized knowledge. In any event, the Defendants' summary judgment motion on damages is denied.

## IV. Conclusion

As explained in this Opinion, RBG's motion for partial summary judgment on validity is denied. Webstaurant's motion for partial summary judgment is granted in that the infringement-liability theory at trial cannot be premised on the purchase of the mark as a keyword for advertising. Webstaurant also prevails against the state

law claims. Webstaurant's motion for partial summary judgment is denied as to the invalidity of the marks and as to damages. Also, Clark Associates remains in the case.

With the summary judgment motions decided, the parties shall promptly engage in settlement negotiations and file a status report on April 21, 2023. The tracking status hearing of April 21, 2023, is reset to April 28, 2023, at 8:30 a.m., but to track the case only (no appearance is required).

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 29, 2023

22